## BARRETT v. JAMES.

1. Letters from a Circuit Judge explaining his intent in a decree previously rendered by him is inadmissible before a succeeding judge when called upon to construe that decree. The decree must speak for itself.

2. A decree adjudged that the defendant was in possession as mortgagee of land which belonged to plaintiffs, and that he must account before the master for the rents and profits *due by him;* that such rents and profits should be applied towards payment of defendant's advances and interest, but gave no directions as to a possible surplus. There being a surplus, *held,* that it belonged to plaintiffs under this decree, and a succeeding judge erred in refusing to pass an administrative order providing for its payment to plaintiffs.

3. A Circuit Judge may correct a mere clerical error in his decree, even after he has left the Circuit, but, *it seems,* it must be done within the time allowed for appealing. He cannot, however, after leaving the

---

Circuit grant an administrative order, consequent upon his former decree, unless by consent.

Before FRASER and KERSHAW, JJ., Sumter, March, 1888.

Upon the points adjudicated, the opinion sufficiently states the case.

*Messrs. Blanding, Wilson & Fraser*, for plaintiff.

*Mr. A. B. Stuckey*, contra.

March 9, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. Without going fully into the scope and objects of this action, it will be sufficient, for the purposes of these appeals, to state in general terms that the main object was to obtain a conveyance from defendant to plaintiffs of certain real estate, which it was claimed he held possession of as equitable mortgagee, under a deed which, though absolute on its face, was intended as a mortgage to secure the repayment of certain money advanced by defendant. One of the allegations in the complaint, denied by the answer, was that the defendant had received from the rents and profits of the land a sum more than sufficient to reimburse him for his advances with interest, and judgment was demanded in the following terms: "That the defendant be required to convey the said premises to the plaintiffs, to give possession to them, and account to them for the rents and profits, and for such other relief as the court may deem just, and for costs."

The case was originally heard by his honor, Judge Kershaw, who, on September 15, 1887, filed his decree, by which, amongst other things, he adjudged "that it be referred to the master to take an account of the rents and profits of the land in question during the time the defendant was in possession thereof, and to state the same;" that he take an account of the moneys advanced by the defendant, with interest thereon, and state the same; "that the amount of rents and profits, ascertained upon said accounting to be due by the defendant, be deducted from the amount of purchase money paid by them (him), with interest as

ascertained by the master;" that if the amount of the rents and profits thus ascertained should prove to be insufficient to pay the advances and interest thereon, made by defendant, then that the land be sold to satisfy the same ; but if the rents and profits should prove sufficient to reimburse defendant's advances and interest thereon, then that the defendant do convey to the plaintiffs the land in question.  This decree contained no provison for the disposition of any excess of the rents and profits over and above the amount of the advances made by defendant, probably for the reason that it was not then supposed that there would be any such excess.

From this decree there was no appeal, and in accordance with one of its provisions the master held a reference for the purpose of performing the duties required of him, at which he was furnished with a statement agreed to by the attorneys on both sides, showing the amount of the rents and profits of the land during the time it was in the possession of the defendant, as well as the amount of advances made by defendant, including the taxes paid by him.  From this agreed statement the master, on January 9, 1888, made his report, showing that the rents and profits exceeded by a considerable sum the advances made by the defendant. To this report it does not appear that either party excepted ; but at the succeeding term of the court the plaintiffs made a motion before his honor, Judge Fraser, for an order requiring the defendant to convey the land to the plaintiffs, and to pay over to the master the excess of the rents and profits over the advances, as ascertained by his report, to be by him distributed amongst the plaintiffs after paying their attorneys' fee out of the same. When the motion was submitted, defendant's attorney handed to the attorney for plaintiffs a deed, conveying the land to plaintiffs. On March 15, 1888, Judge Fraser filed his decree refusing the motion for an order requiring the defendant to pay over the excess of the rents and profits over and above the amount of advances made by the defendant, but saying that "if it is thought important to have an order confirming the master's report, or an order of reference as to counsel fees, the application for such orders may be renewed."  From this decree the plaintiffs imme-

diately gave notice of appeal and served their case on March 17, 1888.

A few days after, to wit, on March 24, 1888, the plaintiffs gave to defendant's attorneys notice that they would apply to Judge Kershaw, at chambers, "for an order to supply the omission of such words in his decree * * * as may clearly dispose of the excess of rents and profits received by the defendant from the land referred to in said decree, over and above the purchase money paid by said defendant for said land and the interest thereon, on the ground that said words or matter to be inserted is clearly consequential on the decree already pronounced and filed as above stated." This motion was heard by Judge Kershaw, at chambers, and on April 3, 1888, he granted an order that, at the appropriate place, which was designated in the decree previously rendered by him, the following words be inserted : "That the defendant do pay to the plaintiffs the excess of rents and profits received by him from said land over and above the purchase money paid by him for the same, and the interest thereon," and directing the clerk of the court to annex this order to the judgment roll in the action, indicating by entries on the margin of the original order that this insertion had been made. From this order defendant appeals upon the grounds set out in the record.

We will first consider the appeal from Judge Fraser's order. We infer from what is said in the decree, and from one of the grounds of appeal, that at the hearing of the motion plaintiffs' attorney proposed to read certain correspondence which had passed between himself and Judge Kershaw for the purpose of showing what was the intention of that judge as to this matter when he rendered his original decree, or what was the proper construction to be placed upon such decree. The judge declined to hear this correspondence; and in this there was no error. It was clearly his duty to put his own construction upon a decree he was asked to carry into effect, from the terms in which it appeared on the record, unaffected by any extraneous testimony, no matter how high the source from which it came; and this duty he proceeded to perform, and the real question for us to decide is, whether he erred in construing the decree. As we

understand it, Judge Fraser construed the decree of Judge Kershaw as a final judgment, which, in effect though not in terms, adjudged that the plaintiffs were not entitled to the excess of the rents and profits over and above the advances. If this be the proper construction, then there was no error in refusing the motion, for it is well settled that one Circuit Judge has no power to correct any errors or supply any omissions in a final judgment rendered by another Circuit Judge.

But is this the proper construction of Judge Kershaw's decree? We do not think it is. We do not think it can be regarded as adjudging that the plaintiffs are not entitled to the excess referred to. It certainly does not so adjudge in express terms, and the omission to provide, in express terms, for the disposition of such excess, in case there proved to be any, cannot have the effect of an adjudication that plaintiffs have no right thereto. On the contrary, it seems to us, that the terms of the decree implied that if there was any excess, it should be paid to the plaintiffs; but as it had not then been ascertained that there would be any excess, and, of course, therefore, its amount could not then be known, the decree did not then provide, in express terms, that such excess should be paid to plaintiffs, as such a provision could more properly and effectually be made by subsequent order, after the amount was ascertained, and such an order made for its payment as would authorize the issuing of an execution to enforce such payment.

The demand of the complaint was that the defendant should account to the plaintiffs for the rents and profits, and this accounting was adjudged by the decree. The language used in the decree—"that the amount of rents and profits ascertained, on such accounting, *to be due by the defendant*," &c.—plainly implies a recognition of plaintiffs' right to the rents and profits, subject only to the reimbursement of the defendant's advances. To whom else could the amount of rents and profits "*be due by the defendant*" but to the plaintiffs? This is the logical and legal consequence of the principles settled by the decree, for it had adjudged that the plaintiffs were the real owners of the land, and as such entitled to an accounting from the defendant for the rents and profits during the time he held possession, subject only to a de-

duction for his advances, and the order applied for seems to us nothing more than an administrative order to carry in effect the principles of the judgment rendered.

Suppose that Judge Kershaw had in his original decree inserted a provision that, in case the accounting which he ordered should show an excess of rents and profits over and above the advances, such excess should be paid to the plaintiffs; before they could have issued an execution to enforce such payment, it would have been necessary for them to obtain an order confirming the master's report ascertaining the specific amount of such excess, and an order requiring such specific amount to be paid to them. That would be merely an administrative order to carry into practical effect a previous judgment which the succeeding Circuit Judge would be fully authorized to make. To borrow an illustration suggested by Judge Kershaw—suppose that in an action for the foreclosure of a mortgage of real estate, the judgment should make no provision for the disposition of the excess of the proceeds of sale in case they should prove more than sufficient to satisfy the mortgage debt and the costs of the action, together with the expenses of the sale, can it be doubted that it would be entirely competent for a succeeding Circuit Judge, when called upon to make an order confirming the report of the sale, by which it is ascertained that there is such excess, also to order that such excess be paid over to the mortgagor? This would be nothing more than an administrative order, disposing of certain funds clearly belonging to one of the parties, which the court by its previous order had brought under its control, and which, when ascertained, the court is bound to restore to its proper owner.

So here, by the decree of Judge Kershaw, it has been adjudged that the plaintiffs are the real owners of the land, and as such they are certainly entitled to the rents and profits, after satisfying the claims of the defendant thereon; and the court, after having adjudged that the defendant must account for the rents and profits, is bound to order so much thereof as may remain after satisfying such claims, to be restored to the rightful owners when the amount is ascertained by the result of the accounting previously ordered. We do not regard the order applied for by plaintiffs either as an order to amend the judgment of Judge Ker-

shaw, or to supply an omission therein, but simply an adminis-
trative order to carry into practical effect the principles settled
by that decree, after the result of the accounting ordered had
been reported to the court.    It seems to us, therefore, that the
order of Judge Fraser should be reversed.

Under this view the appeal from Judge Kershaw's order loses
much, if not all, of its importance.    But still the question as to
its correctness having been made, we are bound to decide it.
While it is true that a Circuit Judge may correct a mere clerical
error in a judgment or decree rendered by him, even after he has
left the Circuit in which such decree was made (*Chafee* v. *Rainey*,
21 S. C., 11), yet we are not prepared to say that such correc-
tion can be made after the time for appealing from such decree
has expired, as that might seriously prejudice the rights of par-
ties.    See *Jeannerett* v. *Radford*, Rich. Eq. Cas., 469.    But
we do not deem it necessary at this time to make any authorita-
tive ruling upon this point, for we do not regard the application
made to Judge Kershaw as an application to correct a mere cler-
ical error.    On the contrary, as will be seen from what has been
said in considering the first appeal, the order really needed and
desired by the plaintiffs was an administrative order, and such an
order we do not think a Circuit Judge has power to grant after
he has left the Circuit to which the case belongs, unless, perhaps,
by consent of parties.    For this reason we think that the order
of Judge Kershaw should also be reversed.

The judgment of this court is, that the order of Judge Fraser,
as well as the order of Judge Kershaw, be reversed, and that the
case be remanded to the Circuit Court for such further proceed-
ings as may be necessary to carry out the views herein announced.